<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

August 8, 2022

William Gibson, Esq.
Anthony Argiropoulos, Esq.
Epstein Becker Green, PC
150 College Road West, Suite 301
Princeton, New Jersey 08540
*Attorneys for Plaintiff Modern Orthopaedics
of New Jersey*

Andrew I. Hamelsky, Esq.
Jenifer Ann Scarcella, Esq.
Stradley Ronon Stevens & Young LLP
101 Park Avenue, Suite 2000
New York, New York 10019
*Attorneys for Defendant Horizon Healthcare Services, Inc*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

Re:   ***Modern Orthopaedics of New Jersey v. Horizon Healthcare Services, Inc.
d/b/a Horizon Blue Cross Blue Shield of New Jersey*
Civil Action No. 21-20174 (SDW) (JBC)**

Counsel:

Before this Court is Defendant Horizon Healthcare Services, Inc. d/b/a Horizon Blue Cross Blue Shield of New Jersey's ("Defendant" or "Horizon") Motion to Dismiss (D.E. 8) Plaintiff Modern Orthopaedics of New Jersey's ("Plaintiff" or "Modern") Complaint (D.E. 1 ("Compl.")) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and 12(b)(1). This opinion is issued without oral argument pursuant to Rule 78. For the reasons discussed below, Defendant's motion is **GRANTED**.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

This action arises of out Horizon's alleged failure to "adequately pay" for elective medical services rendered to Patient A by Modern and failure to provide Modern the "claims data relating to the non-payment" of the elective medical services rendered to Patient A. (Compl. at ¶ 24.)

Modern is a physician practice that provides orthopedic surgery and related medical services to patients in New Jersey. (Compl. at ¶¶ 6, 10.) Horizon is a New Jersey health service corporation that administers plan services for self-funded health plans. (Compl. at ¶ 7.) Modern is an out-of-network provider with Horizon, which means that Modern has no network agreement or contractual relationship with Horizon. (Compl. at ¶¶ 11, 13.) When treating out-of-network patients, Modern and the patient enter into an assignment of benefits ("Assignment of Benefits"), that authorizes Modern to perform all actions necessary to secure payment, collect payment, and acquire medical records from other covered entities on the patient's behalf. (Compl. at ¶¶ 16–17.)

On October 5, 2020, Modern provided elective medical services to Patient A on an out-of-network basis. (Compl. at ¶¶ 23, 47.) Patient A is enrolled in a Horizon NJ Direct health insurance plan ("NJ Direct Plan"). (Compl. at ¶ 22.) The NJ Direct Plan is a self-funded plan made available to employees of the State Health Benefits Program[1] ("SHBP"). (Compl. at ¶ 19; *see also* Certification of Donna Ruotola (D.E. 8–5) and NJ Direct Member Guidebook (D.E. 8–6))[2]. Prior to providing medical services to Patient A, Patient A and Modern executed an Assignment of Benefits. (Compl. at ¶¶ 48–49.)

Patient A's total bill of services was $932.00. (Compl. at ¶ 50.) Horizon paid Modern $418.00 for the services rendered to Patient A and advised in an ERA835 and Explanation of Benefits that the "charge exceeds the maximum allowed by the member's health benefit plan." (Compl. at ¶ 51.) Modern asserts that it "noticed several glaring irregularities represented by Horizon in Patient A's ERA835 and Explanation of Benefits." (*Id.* ¶ 38.) Thereafter, on January 13, 2021, Modern contacted Horizon regarding the claim and was advised by Horizon that "[Patient A's] claim had been processed improperly and that the claim would be reprocessed." (Compl. at ¶ 53.)

On May 17, 2021, Modern submitted a written "Appeal and Request for Records" seeking Patient A's medical records and a fully adjudicated EDI 837 Health Care Claim Transaction Set[3]

---

[1] The NJ Direct Plan under the SHBP sets forth specific procedures for appealing adverse benefit determinations. (D.E. 8–6, NJ Direct Member Guidebook at 53–60.) An adverse benefit determination involving medical judgment made by Horizon is (a) a denial; or (b) a reduction from the application of clinical or medical necessity criteria; or (c) a failure to cover an item or service for which benefits are otherwise provided because Horizon BCBSNJ determines the item or service to be experimental or investigational, cosmetic, or dental, rather than medical. (*Id.* at 53.)

[2] Although a district court generally must confine its review on a Rule 12(b)(6) motion to the pleadings, *see* Fed. R. Civ. P. 12(d), "a court may consider certain narrowly defined types of material without converting the motion to dismiss" into a motion for summary judgment. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). This includes "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal citation omitted); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (internal quotation omitted) (noting the Court can consider documents attached to the complaint or those "*integral to or explicitly* relied upon in the complaint"). Modern attached to its motion, *inter alia*, the NJ Direct Member Guidebook for employees enrolled in the SHBP. (D.E. 8–5, D.E. 8–6.) Because the referenced documents and the information contained therein are "integral to" and "explicitly relied upon in the complaint," the Court will consider and refer to said documents in resolving the present motion. *See In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[3] Plaintiff asserts that an 837 "is used by medical providers to submit a health care claim into the claims handling system for billing purposes." (Compl. at ¶ 29.) After the 837 file is submitted to an insurance carrier, the insurance carrier makes final claim adjudication edits to the 837 file, which includes adjustments for medical necessity, plan

("837"). (Compl. at ¶ 55.) Modern alleges that Horizon responded that the claim had been processed by Zelis, a third-party claims administrator, but failed to provide the fully adjudicated 837 requested. (Compl. at ¶¶ 56–57). Modern asserts that it sent multiple requests for Patient A's medical records, but Horizon refused and ignored its requests. (Compl. at ¶¶ 56–57). On August 5, 2021, Horizon responded that "Horizon BCBSNJ tried to negotiate claim payment but our attempt was unsuccessful. Our final offer of reimbursement was issued [. . .] on 10/29/20 amount of $418.24." (Compl. at ¶ 64). Modern has not alleged that it proceeded with all appeal procedures set forth in the NJ Direct Plan under the SHBP relating to Patient A prior to bringing this action at law.

Modern initiated this action seeking declaratory judgment declaring that: (1) Horizon is required to provide the complete designated record set of Patient A, including the fully adjudicated 837 related to the elective medical services rendered to Patient A and (2) that Horizon's failure and refusal to provide the complete designated record set of Patient A, including the fully adjudicated 837 violates the Health Insurance Portability and Accountability Act ("HIPAA"). Defendant moved to dismiss Plaintiff's Complaint. (D.E. 8.) All timely briefing was filed. (D.E. 11, 12.)

## II.   LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard).

Further, subject matter jurisdiction establishes a court's "very power to hear the case." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) by challenging jurisdiction facially or factually. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial challenge to subject matter jurisdiction "considers a claim on its face and asserts that it is insufficient to invoke the subject-matter jurisdiction of the court." *Id*. at 358. "A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case ... do not support the asserted jurisdiction." *Id.* In a factual attack, "the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), *modified on other grounds by Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).

---

term fee schedules, contractual obligations, repricing arrangements, and/or negotiated discounts. (*Id.* at ¶ 33.) Once the insurance carrier has completed the edits, the 837 is considered fully adjudicated. (*Id.* at ¶ 34.) Modern further asserts that the fully adjudicated 837 will contain the amount billed, the allowed amount, the patient cost-share calculation, the amount the plan will pay to the provider, and record of money owed by the health plan to the provider for the services performed. (*Id.* at ¶¶ 34–35.)

## III.     DISCUSSION

### A. The SHBP and NJ Direct Plan

"The SHBP is a state-run and state-funded plan that provides health insurance to state employees." *Advanced Orthopedics & Sports Med. Inst., P.C. v. Aetna Life Ins. Co.*, Civ. No. 20-7693, 2020 WL 6281685, *2 (D.N.J. Oct. 27, 2020) (citing N.J.S.A. §§ 52:14-17, 52:14-17.27). The SHBP "is, in effect, the State of New Jersey acting as a self-insurer." *Roche v. Aetna, Inc.*, 681 F. App'x 117, 121 (3d Cir. 2016) (citations omitted). The State contracts directly with insurance carriers, such as Horizon, to provide medical coverage to SHBP members. *See* N.J.S.A. § 52:14-17.28. The State Health Benefits Commission ("Commission") administers the SHBP and has the authority to develop rules and regulations related to its operation. *See* N.J.S.A. § 52:14-17.27; *see also Roche v. Aetna, Inc.*, 681 F. App'x at 121. Those regulations are found in New Jersey Administrative Code § 17:9-1.1 *et seq*.

Claim exhaustion is specifically addressed in the regulations. (*Id.*) In pertinent part, the regulations state, "Any member of the SHBP who disagrees with the decision of the carrier and has exhausted all appeals within the plan [. . .] may request that the matter be considered by the Commission." N.J. Admin. Code § 17:9-1.3(a). The final administrative determination of the Commission may be appealed to the New Jersey Superior Court, Appellate Division. *See* N.J. Admin. Code § 17:9-1.3(d)(2). Importantly, the "regulations thus contemplate administrative appeals within the [SHBP] followed by appeals to the Commission prior to filing in court." *Roche v. Aetna, Inc.*, 681 F. App'x at 121. NJ Direct Plan's terms outline specific appeal procedures that must be exhausted within the plan before appealing to the Commission and then seeking further external review. (D.E. 8–6, NJ Direct Member Guidebook at 53–60.)

### B. Exhaustion of Administrative Remedies

"All available and appropriate administrative remedies generally should be fully explored before judicial action is sanctioned." *Advanced Orthopedics & Sports Med. Inst., P.C. v. Aetna Life Ins. Co.*, 2020 WL 6281685, *3 (quoting *Burley v. Prudential Ins. Co. of Am.*, 598 A.2d 936, 939 (N.J. Super. Ct. App. Div. 1991)) (internal quotations omitted). Exhaustion ensures that "claims will be heard as a preliminary matter by a body with expertise, a factual record may be created for appellate review, and there is a chance that the agency decision may satisfy the parties and keep them out of court." *Id.* (quoting *Burley*, 598 A.2d at 939).

Courts in this District have dismissed claims arising from SHBP benefits at the motion to dismiss stage for failure to exhaust administrative remedies. *See, e.g.*, *Advanced Orthopedics & Sports Med. Inst., P.C. v. Aetna Life Ins. Co.*, 2020 WL 6281685, *3–5 (dismissing plaintiff's claims because "[p]laintiff was required to exhaust administrative remedies before proceeding to litigation'); *Gregory Surgical Servs., LLC v. Blue Cross Blue Shield of N.J., Inc.*, Civ. No. 06-0462, 2009 WL 749795, at *4 (D.N.J. Mar. 19, 2009) (granting defendant's motion to dismiss because "[p]laintiff's recourse to appeal claim decisions by [defendant insurance company] is to file an appeal with the [Commission]"); *Kindred Hosps.*, Civ. No. 17-8467, 2019 WL 643604, at *2–3 (D.N.J. Feb. 14, 2019) (granting defendant's motion to dismiss because "those disagreeing with the determinations concerning reimbursements for medical care must exhaust administrative

remedies pursuant to New Jersey Administrative Code 17:9-1.3(a) before proceeding to litigation").

Here, the allegations in Modern's Complaint make clear that this action arises out of Horizon's alleged underpayment of SHBP benefits. (*See generally* Compl.) Specifically, Modern's request for Patient A's medical records and a fully adjudicated 837 directly concern Horizon's payment of the elective medical services rendered to Patient A. (*See generally* Compl.) The requested fully adjudicated 837 contains information concerning the "amount billed, the allowed amount, the patient cost-share calculation" and "record of money owed by the health plan to the provider for the services performed." (Compl. at ¶¶ 34–35.) This is directly related to Horizon's administration of benefits under the SHBP. (Compl. at ¶¶ 34–35.) Further, the Complaint specifically alleges, *inter alia*, that: Modern "has a reasonable expectation that a patient with out-of-network benefits whom they treat will have their medical bill covered at their plan's out-of-network benefit level" (*Id.* at ¶ 21); "Horizon failed to adequately pay for elective medical services rendered to Patient A" (*Id.* at ¶ 24); "Horizon has also failed to provide to [Plaintiff] the claims data relating to the non-payment" (*Id.* at ¶ 24); Plaintiff "noticed several glaring irregularities represented by Horizon in Patient A's ERA835 and Explanation of Benefits" (*Id.* ¶ 38); the total bill for services rendered was $932, but Plaintiff paid $418 (*Id.* ¶¶ 50-51); "Horizon never agreed to any negotiated amount for Patient A with Horizon, Zelis, or any other third-party repricing company" (*Id.* at ¶ 58); "Horizon is making up reasons for not paying [Plaintiff] billed charges for Patient A's care" (*Id.* ¶ 68); and Horizon refuses to provide the fully adjudicated 837, which sets forth "the amount of money that the self-funded health plan contributed or otherwise paid for Patient A's care." (*Id.* at ¶ 71.) In sum, Modern's assertions that this claim does not challenge Horizon's failure to pay or its administration of benefits under the SHBP are belied by the record.

Given the above regulations of the SHBP and the NJ Direct Plan's terms, Modern is required to exhaust its administrative remedies prior to filing an action. As an assignee of Patient A, who is enrolled in the NJ Direct Plan offered through the SHBP, Modern is required to follow the administrative appeal procedures regarding any dispute over Horizon's administration of SHBP benefits. (Compl. at ¶ 22; *see also* D.E. 8–6.) The Complaint demonstrates that Modern failed to follow the appeals procedure mandated by the SHBP and the NJ Direct Plan. Without Modern's exhaustion of its administrative remedies, this Court therefore lacks jurisdiction to hear this dispute and the Complaint must be dismissed.

C. **Plaintiff's Claims under HIPAA**

As an additional argument, Modern contends that a private cause of action exists under HIPAA. (D.E. 11 at 7–10.)

The Third Circuit has recently reaffirmed that "HIPAA does not provide a private cause of action." *See, e.g.*, *Beckett v. Grant*, Civ. No. 19-3717, 2022 WL 485221, *3 (3d Cir. Feb. 17, 2022) (citing *Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020); *Johnson v. WPIC*, 782 F. App'x 169, 171 (3d Cir. 2019) ("HIPAA does not create a private right of action"); *Hatfield v. Berube*, 714 F. App'x 99, 105 (3d Cir. 2017) (finding that plaintiff cannot proceed with her claims under HIPAA because "HIPAA does not create a private right of action for alleged

disclosures of confidential medical information"). "The ability to bring an enforcement action to remedy HIPAA violations, and ensure that a healthcare provider is HIPAA complaint, lies within the exclusive province of the Secretary of Health and Human Services, not the hands of private citizens." *See Polanco v. Omnicell, Inc.*, 988 F.Supp.2d 451, 469 (D.N.J. 2013) (citing *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) ("HIPAA limits the enforcement of the statute to the Secretary of Health and Human Services").

Plaintiff seeks to circumvent well-established law that HIPAA does not provide for an express or implied private right of action to remedy HIPAA violations by asking this Court to hold for the first time that a violation of an "individual['s] (or their designated representative['s]) right to access their protected health information pursuant to 45 C.F.R.§ 164.524" creates a private right of action. (D.E. 11 at 7-10.)[4] This Court declines and joins the numerous courts which have held that there is no federal private right of action under HIPAA, express or implied. *See, e.g., Polanco v. Omnicell, Inc.*, 988 F.Supp.2d 451, 468 (D.N.J. Dec. 26, 2013) (noting that "HIPAA does not provide a private right of action to remedy HIPAA violations"); *Baum v. Keystone Mercy Health Plan*, 826 F. Supp. 2d 718, 721 (E.D. Pa. 2011) ("there is no federal private right of action to remedy HIPAA violations"); *Feliciano v. May*, Civ. No. 17-8291, 2021 WL 1171638, *3 (D.N.J. Mar. 29, 2021) (dismissing plaintiff's motion for summary judgment on grounds that plaintiff cannot recover under 42 U.S.C. § 1983 for an alleged HIPAA violation because HIPAA does not create a private right of action express or implied); *Hamilton v. Hite*, Civ. No. 16-5602, 2017 WL 3675398, at *6 (E.D. Pa. Aug. 23, 2017) (plaintiff's "claim fails as a matter of law because HIPAA does not provide for a private cause of action"); *Jackson v. Mercy Behavioral Health*, Civ. No. 14-1000, 2015 WL 401645, *4 (W.D. Pa. Jan. 28, 2015) ("because [plaintiff] asserts a HIPAA violation as a private citizen, and because such actions are within the exclusive jurisdiction of the Department of Health and Human Services and the OCR, we do not have subject matter jurisdiction over her claim").

Accordingly, Plaintiff's claim for violation of HIPAA fails as a matter of law because HIPAA does not provide a private cause of action.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion is **GRANTED** and Plaintiff's Complaint is **DISMISSED**. An appropriate order follows.

 /s/ Susan D. Wigenton  
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk  
cc: Parties  
 James B. Clark, U.S.M.J.

---

[4] To the extent Plaintiff asserts a distinction exists between a right to access (45 C.F.R.§ 164.524) and disclosure (45 C.F.R. § 164.502 et seq.) that would create a private right of action, it is a distinction without a difference.